IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| HEATHER NICOLE GRAVES,<br><br>Plaintiff,<br><br>WHITLEY COUNTY CONSOLIDATED SCHOOLS GOVERNING BOARD; DR. LAURA MCDERMOTT, in her official capacity as a Superintendent for Whitley County Consolidated Schools and in her individual capacity,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES** |

## INTRODUCTION

1. Whitley County Consolidated Schools Board of Trustees, acting through the Superintendent, issued a no-trespass order against Heather Nicole Graves and placed her on a "communications plan"—which prohibited her from making "any contact" with school staff members without approval from the Superintendent's Office for over a year—all because she exercised her constitutional right to audio record a meeting between herself, her husband, and the school principal regarding an incident report filed by her daughter. Exhibit 1.

2. Defendants imposed this no-trespass order and communications plan because they claimed that recording the meeting violated a policy that prohibits all audio recordings of meetings without the permission of the building administrator. Exhibit 2.

3. While the no-trespass order and communications plan were removed after a year, the policy prohibiting audio recordings of meetings without the permission of the building administrator remains in place, and Mrs. Graves plans to record meetings in the future due to her lack of trust in school officials and out of a desire to ensure transparency and accountability.

1

4. The recording policy and the attendant no-trespass/communication orders violate the First Amendment, which protects the right to record government officials in the performance of their duties.

5. The orders also violate the Fourteenth Amendment's due process clause, which protects the fundamental right of parents to control and direct the education and upbringing of their children. This right is the oldest right that the Supreme Court has recognized as fundamental as one of the "liberties" protected by the due process clause.

6. When taken together, these rights are clear: parents have a right to record a meeting that a parent has with a school official when that meeting concerns that parent's child.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Heather Nicole Graves resides in Columbia City, Indiana. She is the mother of multiple children who attend schools governed by Whitley County Consolidated Schools.

8. Two of Graves's children will be entering kindergarten in Fall 2025; one will be entering third grade in Fall 2025 and was in first grade at the time of the incident described below in Paragraphs 18 through 38, and another (the daughter who filed the incident report that led to the audio recording), is a rising freshman who was attending seventh grade at Indian Springs Middle School at the time of the incident.

9. Defendant Board of Trustees ("School Board") is the governing board for Whitley County Consolidated Schools ("WCCS")—an Indiana public school corporation and a local educational agency as defined by IC § 20-26-2-4, with its principal office in Whitley County, Indiana, located at 107 North Walnut Street, Columbia City, Indiana 46725. The Board governs a school corporation under I.C. § 20-18-2-5 and is empowered to carry out the purposes of the

2

school corporation and has the power "[i]n the name of the school corporation, to sue and be sued and to enter into contracts in matters permitted by applicable law." IC § 20-26-5-4.

10. Defendant Superintendent Laura McDermott is, and at all relevant times was, the Superintendent of WCCS. As Superintendent, Defendant McDermott is the general administrator of the school corporation and is empowered under IC § 20-25-3-10 to "make all other decisions and perform all other duties that are prescribed by law or that reasonably fall within the superintendent's power and jurisdiction." Defendant McDermott is a "person" under 42 U.S.C. 1983 and at all relevant times acted under color of state law. Defendant McDermott is sued in both her official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908), and her individual capacity pursuant to 42 U.S.C. § 1983.

11. Plaintiff's action, filed pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201(a) and 2202, seeks (1) a declaration that Defendant School Board's policy that prohibits parents from recording a meeting with school officials about that parent's child without the permission of the building administrator is unconstitutional under the First and Fourteenth Amendments; (2) a declaration that Defendant School Board and Defendant McDermott, acting in her individual and official capacity, engaged in unconstitutional First Amendment retaliation when they issued a no-trespass order against Plaintiff and placed her on a communications plan because she recorded a meeting with the Indian Springs Middle School principal about her daughter; (3) nominal damages with respect to the latter; (4) a declaration that any policy not requiring school officials to notify a parent of an incident report filed by that parent's student alleging misconduct by an employee or contractor of the school corporation violates the Constitution's protections for parental rights; and (5) a permanent injunction prohibiting Defendant School District and Defendant Superintendent in her official capacity from applying and enforcing their policy or

policies to prohibit Plaintiff from recording meetings between herself and school officials about her child without the consent or permission of the Building Administrator.

12. At all times and in all incidents described herein, Defendants were acting under color of state law.

13. This Court possesses jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a), and 42 U.S.C. § 1988.

14. This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C §§ 2201, 2202.

15. Pursuant to 28 U.S.C § 1391(b)(1) and (2), venue is proper in this judicial district because Defendants reside within the boundaries of the district and the events giving rise to Plaintiff's claims occurred within it.

## STATEMENT OF FACTS

16. Plaintiff has four children that attend schools governed by Defendant School Board and administered by Defendant McDermott, including at the time relevant to this incident a daughter at Indian Springs Middle School. That daughter is now a rising freshman at a school governed by Defendant School Board. Plaintiff has two children entering kindergarten and one child who is a rising third-grader.

17. Her children frequently take buses to and from school.

18. On April 30, 2024, Plaintiff's daughter, then in seventh grade, was riding the bus on the way to Indian Springs Middle School when the bus driver stopped the bus, and in an effort to discipline or quiet the children on the bus, removed his belt, then walked up and down the aisle of the bus slapping the belt against his hand in a menacing manner that frightened

Plaintiff's daughter. Because the bus driver had removed his belt, his pants slid down and he proceeded to speak to the students regarding his underwear.

19. Plaintiff's daughter recorded a video of this incident on her smart phone.

20. Plaintiff's daughter shortly thereafter filed an incident report with the school alleging misconduct on the part of the bus driver.

21. The principal and assistant principal of Indian Springs Middle School then met with Plaintiff's daughter to discuss the incident report.

22. Plaintiff was not present at this meeting, nor was she informed about either the incident or the meeting between school officials and her child.

23. Plaintiff's daughter eventually informed Plaintiff of the incident and of the meeting with the principal and assistant principal.

24. Plaintiff then contacted the school principal to arrange a meeting for May 9, 2024, to discuss both the incident and the lack of notice to Plaintiff about the concerns voiced by her daughter.

25. Plaintiff and her family took this incident quite seriously because they had previous experiences with unprofessional behavior on the part of school bus drivers, had complained about those experiences, and no serious steps were taken to address their complaints. Consequently, Plaintiff decided to audio record the May 9, 2024, meeting to ensure an accurate and full record of the conversation that took place between her, her husband, and the Indian Springs Middle School principal.

26. The May 9, 2024, meeting was not productive and culminated with the principal stating that if Plaintiff did not feel comfortable with her child riding the bus, and/or did not trust

the school transportation system, Plaintiff should simply drive her daughter—and other children—to and from school herself.

27. Plaintiff was informed and believes, and on that basis alleges that the principal was more concerned at the May 9, 2024, meeting with explaining that it is not his job to oversee school bus drivers and equating previous and admittedly false allegations made by other students against school employees with the incontrovertible video evidence showing the bus driver intimidating students with his belt.

28. Plaintiff was frustrated by the May 9, 2024, meeting and therefore after leaving that meeting called Defendant McDermott. Plaintiff did not record the phone call. However, Defendant McDermott stated that she was not concerned with the behavior of the bus driver, and made clear that she believed that parents' failure to discipline their children makes it challenging for bus drivers to deal with unruly riders.

29. After these two unproductive conversations, Plaintiff decided to post the audio recording of the May 9, 2024 meeting with the principal on social media, along with two clips of the video her daughter made of the bus incident with the bus driver. She edited the video clips to ensure student privacy.

30. Plaintiff posted these clips to her Facebook profile page on May 16, 2024. Plaintiff explained in the post that she "want[ed] other parents to know what kind of individuals are taking care of our children at school." Exhibit 3.

31. Plaintiff's post further states: "The principal of ISMS and the superintendent of WCCS are a disgrace to our children. No one can change my mind. There was a recorded incident of a man (part of their faculty) on a bus full of middle schoolers with a belt, slapping it on his hand and walking up and down the aisle. In the process, his pants fell down and he

6

proceeds to talk about what color boxers he will be wearing the next day. I set up a meeting with the principal to try to understand; why I wasn't made aware, if there were actions taken, and why in the world it is all brushed under the rug. I listened as excuses were made for grown adults and then onto blaming our children. He told me if I didn't trust the transportation system they provide, to take my child to school and pick her up. … At that point, I decided I needed to end the conversation with him because I was irate and could not stay in the same room as him any longer. I reached out to the superintendent to get somewhere with this. … The superintendent was extremely bored with the whole situation and did nothing to handle the situation. The only time she showed any sort of emotion was when she got angry when we stated it was intimidation and borderline indecent exposure (because his pants came down), and turned it back around on the minors and how they don't follow the rules and the school gets no support from the homes. I stated the point was [moot] because my child is not bad on the bus or at school and I have never gotten a phone call or note home about her and that I absolutely would support the school if my child was acting like a fool." Exhibit 3.

32.     The post concludes by explaining the three video clips and stating: "I hope this post reaches far and wide so we can all be more vigilant with the school system because I do not have high hopes if we don't get some new individuals in those positions that WANT to make our children feel safe and cared for, not JUST their faculty." Exhibit 3.

33.     On May 28, 2024, less than two weeks after this post, Defendant School Board and Defendant McDermott imposed a no-trespass order against Plaintiff and instituted a communications plan for Plaintiff with school officials, as described below.

**The No-Trespass Letter**

34. On May 28, 2024, Plaintiff received a letter from Defendant School Board and signed by Defendant McDermott. (No-Trespass Order) Exhibit 1.

35. The letter states that because she recorded a meeting with the school principal that "[f]rom this time forward, until further notice from WCCS or our attorney, you are not to show up at any WCCS school building to attend any voluntary activity, such as sports contests, concerts, plays, etc., without written permission from the Superintendent's office at least 24 hours in advance." *Id*.

36. The letter further imposed a communications plan, which prohibited Plaintiff from making "any contact with any WCCS staff members without first contacting the Superintendent's office." Further, all "communications from staff members will now occur in written format." *Id*.

37. The letter also mandated that if Plaintiff needed to pick up her child "for an appointment," she "must phone the Superintendent's office at least two hours ahead of time to request your daughter be available for pick-up," and must remain in her vehicle while her child would be sent out to Plaintiff. *Id*.

38. Finally, the letter threatened that if Plaintiff "should show up at any of the WCCS school buildings without prior approval by the Superintendent, it will be considered trespassing and will be dealt with accordingly," while allowing Plaintiff to "access school premises *only* to attend required, scheduled meetings, such as a parent-teacher conference." *Id.* (emphasis added).

**School Policy**

39. Defendant School Board's Policy 2410 deals directly with the audio and videotaping of meetings. Exhibit 2.

8

40. The policy asserts that "the education of children is a joint responsibility, one it shares with the parents of the school community." *Id.*

41. Under this policy, "[m]eetings such as parent-teacher conferences, case conferences, meetings under Section 504 of the Rehabilitation Act, discipline-related conferences and the like, may be audiotaped *with the permission of the building administrator* but may also be recorded by the School Corporation." *Id.* (emphasis added).

42. The policy also lists the factors of deciding whether the building administrator should allow the recording and whether other students' privacy would be affected by the recording is not one of the listed factors for consideration. *Id.*

43. Plaintiff did not have the permission of the building administrator or any other school official to record the May 9, 2024, meeting between her husband, the principal, and herself.

## Demand Letter

44. On May 7, 2025, Plaintiff, through counsel, sent a letter to Defendant Superintendent McDermott and the Defendant School Board (1) demanding the revocation of the no-trespass order and communications plan, (2) demanding the revocation of the policy mandating approval from the building administrator for recording meetings with school officials, and (3) seeking clarification of Defendant School District's policy regarding the circumstances under which the School District will notify parents when their child(ren) files an incident report alleging misconduct by an adult employee or contractor of the District. Exhibit 4.

45. On June 4, 2025, Defendant McDermott sent a letter to Plaintiff informing her that the no-trespass order was no longer in effect. Exhibit 5.

46. That letter made clear, however, that the order would be reinstated if Plaintiff "violate[s] district policy" in the future. Exhibit 5.

47. Plaintiff plans to record meetings with School District officials in the future to ensure accuracy, and to hold school officials accountable for their decisions to prioritize employees over their students.

## Injuries to Plaintiff

48. The First Amendment protects more than just verbal and written speech. It also protects conduct that is inherently expressive or that cannot be separated from the act of speech making. This includes the right to record meetings with government officials. *See, e.g., Nicodemus v. City of S. Bend,* 137 F.4th 654, 663–64 (7th Cir. 2025).

49. Defendant School Board's official policy violates this right, by, among other things, making the exercise of this right conditional on the unbridled discretion of a government employee.

50. Plaintiff's First Amendment rights were also violated by the Defendant School Board and Defendant McDermott's decision to issue a no-trespass order against Plaintiff and implement a communications plan against her in retaliation against Plaintiff's decision to engage in conduct protected by the First Amendment.

51. Plaintiff also has a fundamental constitutional right, guaranteed by the due process clause of the Fourteenth Amendment, to control and direct the education of her children. By not informing her of an incident report filed by her daughter alleging misconduct of a school employee or contractor, Defendants obstructed and rendered impossible Plaintiff's exercise of this right because it made it impossible for Plaintiff to make an immediate decision regarding her child's education and safety.

52. Defendants collectively also violated Plaintiff's constitutionally protected parental rights by banning her from school grounds and limiting her communications with school officials who have regular contact with her children. A parent cannot meaningfully exercise her fundamental constitutional right to control and direct the upbringing of her children when her ability to communicate with staff is restricted in the arbitrary, unjust, and unconstitutional manner as described herein.

53. Defendant School Board further violated Plaintiff's fundamental parental rights by having an official policy that either prohibits or does not require the notification of parents when their child(ren) file an incident report alleging misconduct by a school employee or contractor.

## Declaratory and Injunctive Relief Allegations

54. An actual and substantial controversy exists between Plaintiff and Defendants as to their respective legal rights and duties. Plaintiff contends, pursuant to 42 U.S.C. § 1983, that the Defendant School Board's policies and actions as described herein violate her rights of free speech and to oversee the upbringing of her child as protected by the First and Fourteenth Amendments. Plaintiff is informed and believes, and on that basis alleges, that Defendants hold their actions as described herein to be lawful in all respects. Plaintiff is informed and believes, and on that basis alleges, that Defendants insist in their claim of authority to impose further no-trespass/communication orders in the future as they may consider warranted.

55. Accordingly, declaratory relief is appropriate.

56. Due to Defendants' actions and policies, Plaintiff cannot record meetings with school officials and is left in the dark respecting additional or future incidents of misconduct by school employees or contractors toward her child(ren).

57. Plaintiff intends and currently plans to audio record future meetings with school officials.

58. If not permanently enjoined by the Court, Defendants and their agents, representatives, and employees will continue to enforce policies that prohibit recording without permission and that permit the non-notification of parents respecting incident reports, which policies deprive Plaintiff of her constitutional rights. Thus, the policies and actions described herein are now causing and will continue to cause Plaintiff to suffer irreparable injury.

59. Plaintiff has no plain, speedy, and adequate remedy at law for these injuries.

60. Accordingly, injunctive relief is appropriate.

## CAUSES OF ACTION

### Count 1
### Right to Record – First Amendment

61. Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62. The First Amendment binds the state and local government pursuant to the incorporation of the Fourteenth Amendment. In all the following paragraphs, references to the First Amendment include the First Amendment as applied to states, localities, and school districts through the Fourteenth Amendment.

63. The First Amendment protects the rights of individuals to engage in free speech. Laws that impermissibly encroach upon freedom of speech are unconstitutional. The First Amendment's protection for freedom of speech includes the right to record public officials in the exercise of their duties. *Nicodemus*, 137 F.4th at 663-64. The act of recording itself communicates, *inter alia,* a message of distrust or a desire to accurately remember the conversation. Further, "[t]he act of *making* an audio or audiovisual recording is necessarily

included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording." *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012).

64. Individuals have a right to record meetings with government officials whenever that individual is lawfully present, so long as the recording would not violate the privacy rights of other nongovernmental individuals.

65. Defendant School Board's Policy 2410 – Audio and Videotaping of Meetings, bans Plaintiff from recording a meeting with a school official without the permission of the building administrator, even if the privacy rights of other students are not implicated.

66. Plaintiff is informed and believes and on that basis alleges that Policy 2410 provides no objective guidelines or limitations for the building administrator to follow when determining whether to grant permission, specifies no deadline for the building administrator to comply with when making such a decision, and provides no appeal process in the event of a wrongful decision by the building administrator.

67. There is no compelling, substantial, important, or even rational reason for Defendant School Board's policy which prohibits a parent from recording a meeting with a school official when there is no genuine threat to a non-government employee's privacy.

68. As a direct result of Defendant School Board's policy, Plaintiff continues to suffer an immediate and direct injury as she is not permitted to exercise her constitutional rights. Plaintiff is informed and believes and on that basis alleges that Defendant School Board and Defendant Superintendent contend that their actions are lawful in all respects and, as she is charged with enforcing the policy, that they will continue to engage in conduct that violates the First Amendment if not enjoined by this Court.

**Count 2**
**Right to Record – Parental Rights as Protected by the Fourteenth Amendment**

69. Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70. One of the rights that the Supreme Court has repeatedly held to be a fundamental right protected under the Fourteenth Amendment is the right of parents to control and direct the education and general upbringing of their own child. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57 (2000).

71. The state may interfere in a parent-child relationship only when necessary to protect the health or safety of a child.

72. Defendant School Board has a policy that prohibits the recording of meetings by parents with school officials unless the parents first obtain the permission of the building administrator. This policy violates parental rights by preventing a parent from recording a meeting between the parent(s) and a school official when the conversation is about that parent's child and does not meaningfully affect the privacy rights of a student or individual that is not an employee or contractor of the school district.

73. Defendant School Board's adoption of this policy that prevents recording by parents evinces a deliberate indifference to Plaintiff's parental rights as there is no sufficient government interest in preventing parents from recording a meeting with a school official that does not violate the privacy rights of a student or individual not an employee or contractor of the school district.

74. There is no compelling, substantial, important, or even rational reason for the prohibition on recording, nor was such prohibition necessary to achieve, narrowly tailored to,

reasonably related to, or rationally related to any compelling, substantial, or legitimate government interest.

75. Plaintiff is informed and believes, and on that basis alleges, that Defendant School Board and Defendant Superintendent, contend that their actions are lawful in all respects and, will continue to engage in violations of parental rights if not enjoined by this Court.

**Count 3**
**42 U.S.C. § 1983 – First and Fourteenth Amendment**
**(Retaliation Claim Against All Defendants)**

76. Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77. A defendant engages in First Amendment retaliation if (1) the plaintiff engaged in activity protected by the First Amendment; (2) the plaintiff suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the protected activity was at least a motivating factor in a defendant's decision to take the retaliatory action. *Darlingh v. Maddaleni,* 142 F.4th 558, 564 (7th Cir. 2025).

78. Plaintiff's decision to audio record the May 9, 2024 meeting with the Indian Springs Middle School principal regarding her daughter's report of misconduct by a WCCS employee/contractor is safeguarded by the First Amendment.

79. Defendant McDermott, using her authority under the color of state law, subjected Plaintiff to the deprivation of her rights under the First Amendment by retaliating against her for exercising those rights. Specifically Defendant McDermott issued a no-trespass order against Plaintiff and placed Plaintiff on a communications plan because of Plaintiff's decision to record the May 9, 2024, meeting.

80. Defendant School Board has a policy that permits the implementation of a "communication plan" and the issuance of a no-trespass order if a parent is disruptive or acts in an uncivil manner. Exhibit 6. Plaintiff is informed and believes and on that basis alleges that Defendant McDermott acted in accordance with the policy when imposing the no-trespass/communications plan on Plaintiff. This policy was enacted with deliberate indifference to the First Amendment right of individuals to speak and not be retaliated against for their protected speech. Its implementation by Defendants has caused Plaintiff's injuries by subjecting her to punishment for her exercise of her rights to free speech and to direct the upbringing of her child.

81. Motivated to punish and intimidate Plaintiff for her exercise of free speech, Defendant McDermott engaged in a harmful act against Plaintiff in violation of clearly established and obvious First Amendment law, as described herein. It is clearly established and otherwise obvious that retaliating against Plaintiff by banning her from school grounds and limiting her mode and method of communication with government officials who have direct contact with her children on account of Plaintiff's First Amendment activity is unconstitutional. Every reasonable government official would have had fair warning that doing so is unconstitutional because of precedent and the obvious nature of the protected activity.

82. Defendant McDermott's unconstitutional act was motivated by retaliatory animus and directly harmed Plaintiff by chilling her ability to exercise her First Amendment rights.

<u>**Count 4**</u>
**42 U.S.C. § 1983 – First and Fourteenth Amendment**
**(No-Trespass Order—Procedural Due Process)**

83. Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84. The Due Process Clause of the United States Constitution prohibits the states from depriving "any person of ... liberty ... without due process of law." U.S. Const. amend. XIV § 1. Which protections are due in a given case requires a careful analysis of the importance of the rights and the other interests at stake. *See Mathews v. Eldridge,* 424 U.S. 319, 334–35 (1976); *Nozzi v. Hous. Auth. of L.A.,* 806 F.3d 1178, 1192 (9th Cir. 2015).

85. The Due Process Clause of the Fourteenth Amendment protects against government action that impairs constitutional rights without adequate procedural safeguards. Procedural due process forbids the government from depriving Plaintiff of her constitutional rights except through some individualized process including a post-deprivation hearing and requires the government to consider the significance of her private interest, the risk that the government's procedures might erroneously deprive Plaintiff of that interest, the extent to which different procedures might reduce that risk, and the government's reason, if any, for employing alternative methods of protecting Plaintiff's rights.

86. Plaintiff did not receive any individualized process either before or after the imposition of the no-trespass order or the communications plan. Plaintiff was deprived of any opportunity to challenge the no-trespass order and the communications plan before a neutral decision maker.

87. The decision to impose the no-trespass order and place Plaintiff on the communications plan was arbitrary. Further, the Superintendent has threatened to impose the penalties again if Plaintiff records future meetings with school officials. Exhibit 5.

88. These actions in the past, and the threats of these actions in the future constitute violations of the Due Process Clause of the Fourteenth Amendment and without an injunction,

Defendants will continue to impose no trespass orders and communications plans without providing the constitutionally required process.

## Count 5
### 42 U.S.C. § 1983 – Fourteenth Amendment
### (Parental Rights – Against WCCS and School Board)

89. Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90. Plaintiff was not informed by a school official that her daughter filed an incident report alleging misconduct on behalf of a WCCS bus driver. The Indian Springs Middle School principal informed Plaintiff that he rarely notifies parents of incident reports filed by a student.

91. Plaintiff is informed and believes and, on this basis alleges that Defendant School Board has no policy that requires notification of incidents filed by a student alleging misconduct by an employee or contractor of a school or school district.

92. By not informing parents of such incidents, Defendants violate the rights of parents, including Plaintiff, by depriving them of the information necessary to determine whether Indian Springs Middle School remains the best educational environment for their children. When a school has information about a child, information that is relevant to a child's mental or physical health—including alleged misconduct on behalf of a school employee or contractor—that school has a duty to inform parents of that information because a parent is *required* by the state to send their child to school.

93. There is no compelling, substantial, important, or even rational reason for Defendant School Board's lack of a policy requiring parental notification of an incident report alleging misconduct by a school employee or contractor.

94. As a direct result of Defendant School Board's policies as described herein Plaintiff continues to suffer an immediate and direct injury because school officials have already withheld information from her and she has every reason to believe that school officials will withhold information again in the future.

95. Defendant School Board, and its employees and agents, will continue to engage in conduct that violates parental rights if it is not enjoined by this Court.

### REQUESTS FOR RELIEF

A. A declaratory judgment by the Court that Defendant School Board's policy or policies preventing a parent from recording a meeting with school officials as described herein violates the First Amendment;

B. A declaratory judgment by the Court that Defendant School Board's policy of preventing a parent from recording a meeting with a school official about the parent's child violates the Fourteenth Amendment;

C. A declaratory judgment by the Court that Defendant Superintendent's placing of Plaintiff on a communications plan violated the Fourteenth Amendment.

D. An injunction prohibiting Defendant School District and Defendant Superintendent in her official capacity from applying and enforcing their policy or policies to prohibit Plaintiff from recording meetings between herself and school officials about her child without the consent or permission of the Building Administrator;

E. A declaratory judgment that the lack of any independent and neutral procedures either before or after the imposition of the no-trespass order and the communications plan violates the Fourteenth Amendment;

  F. A declaratory judgment that the lack of a policy requiring parental notification when a student files an incident report alleging misconduct by a school employee or contractor violates the Fourteenth Amendment.

  G. An award of nominal damages in the amount of $1.00 for the violations of Plaintiff's constitutional rights;

  H. An award of attorney fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

  I. Such other legal and equitable relief the Court may deem appropriate and just.

**RESPECTFULLY SUBMITTED** this 12th day of August 2025 by:

    /s/ *Adam C. Shelton*
    Adam C. Shelton
    **Scharf-Norton Center for Constitutional Litigation**
    **at the GOLDWATER INSTITUTE**
    500 East Coronado Road
    Phoenix, Arizona 85004
    (602) 462-5000
    litigation@goldwaterinstitute.org

    /s/ *Morgan P. Cleary*
    Morgan P. Cleary (38667-71)
    Thomas J Costakis (4314-49)
    **Krieg DeVault LLP**
    One Indiana Square, Suite 2800
    Indianapolis, Indiana 46204-2079
    (317) 238-6308
    mcleary@kdlegal.com

    *Attorneys for Plaintiff*